

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 4, 1992

Honorable John Whitmire
Chairman
Intergovernmental Relations
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-184

Re: Whether the provisions of House Bill 799 of the 72d Legislature apply to the procurement of brokerage and investment services by state agencies (RQ-239)

Dear Senator Whitmire:

You ask whether the provisions of House Bill 799 of the 72d Regular Legislative Session apply to the procurement of brokerage and investment services by state agencies involved in money management. House Bill 799 amends article 601b, V.T.C.S., and relates to state contracts for the procurement of goods and services from "disadvantaged businesses." Acts 1991, 72d Leg., ch. 677, at 2457. The provisions of House Bill 799 became effective September 1, 1991, but shall apply only to contracts awarded on or after September 1, 1992. *Id.* § 7, at 2459. We understand your question primarily relates to the activities of statewide retirement systems, such as the Employees Retirement System (ERS) and the Teacher Retirement System (TRS), that are authorized to invest their assets in securities without distinction as to their source. *See, e.g.,* Gov't Code §§ 815.301(a) (Employees Retirement System), 825.301(a) (Teacher Retirement System).

We also understand your question pertains to services of individuals who supply investment advice to the boards of trustees of retirement systems as well as to services of individuals who execute securities transactions at the direction of and on behalf of the boards of trustees of the retirement systems. *See, e.g., id.* §§ 815.301(c) (board of trustees of ERS may contract with private, professional investment managers to assist board in investing assets of the system), 825.301(b) (same authority for TRS board of trustees). We will address your question accordingly.[1] As this opinion shall explain, we conclude that contracts for investment counseling

---

[1]This opinion does not address the applicability of article 601b outside of the procurement context.

or investment advice are excepted from compliance with the terms of House Bill 799; however, we believe the boards of trustees of ERS and TRS must comply with its provisions when entering into contracts for brokerage services.

House Bill 799 added the following language to section 3.10 of article 601b, V.T.C.S.

> (b) The [General Services] commission *shall make a good faith effort to assist disadvantaged businesses*[2] *to receive at least 10 percent of the total value of all contract awards for* the purchase of supplies, materials, *services*, and equipment that the commission expects to make for a *state agency* in its fiscal year. The commission shall estimate the expected total value of an agency's contract awards not later than the 60th day of the

---

[2]House Bill 799 defines "disadvantaged business" to mean

(A) a corporation formed for the purpose of making a profit in which at least 51 percent of all classes of the shares of stock or other equitable securities are owned by one or more persons who are socially disadvantaged because of their identification as members of certain groups, including black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans, who have suffered the effects of discriminatory practices or similar insidious circumstances over which they have no control;

(B) a sole proprietorship created for the purpose of making a profit that is 100 percent owned, operated, and controlled by a person described by Paragraph (A) of this subdivision;

(C) a partnership formed for the purpose of making a profit in which at least 51 percent of the assets and interest in the partnership is owned by one or more persons described by Paragraph (A) of this subdivision. Those persons must have a proportionate interest in the control, operation, and management of the partnership['s] affairs;

(D) a joint venture in which each entity in the joint venture is a disadvantaged business under this subdivision; or

(E) a supplier contract [sic] between a disadvantaged business under this subdivision and a prime contractor under which the disadvantaged business is directly involved in the manufacture or distribution of the supplies or materials or otherwise warehouses and ships the supplies.

Acts 1991, 72d Leg., ch. 677, § 1, at 2457 (V.T.C.S. art. 601b, § 1.02(3)).

agency's fiscal year and may revise the estimate as new information requires.

Acts 1991, 72d Leg., ch. 677, § 5, at 2458 (emphasis added). We are advised that the boards of trustees of ERS and TRS, rather than the General Services Commission, make contracts for the services in question.

The resolution of your question therefore will depend on whether the procurement in question is for services within the meaning of article 601b. The statute defines "services" as "the furnishing of skilled or unskilled labor or professional work but does not include:"

> (1) professional services covered by the Professional Services Procurement Act [article 664-4, V.T.C.S.];

> (2) services of an employee of a state agency;

> (3) consulting services or services of a private consultant as defined by [article 6252-11c, V.T.C.S.]; or

> (4) services of public utilities.

V.T.C.S. art. 601b, § 3.01(c).

The second and fourth exceptions obviously are not involved here. The Professional Services Procurement Act does not by its terms apply to the services of investment brokers, advisers, or managers. Article 6252-11c applies to contracts for private consulting services by state agencies. It defines "consulting service" to mean "the human service of studying or advising a state agency under a contract that does not involve the traditional relationship of employer and employee." V.T.C.S. art. 6252-11c, § 1(1). The act specifically states that it does not apply to and is not intended to discourage the use of consulting services provided by, among other persons, "investment counselors," and "other consultants whose services are determined by the governing board of a retirement system trust fund to be necessary for the performance of its fiduciary duties under the state constitution." Id. § 2(a)(3), (6).

The consulting services of investment counselors thus are excepted from the provisions of both V.T.C.S. articles 6252-11c and 601b. However, we do not believe that brokerage services which involve only the execution of securities transactions on the instructions of a retirement system's board of trustees are excepted under the provision just quoted because such services may not be classified as consulting

services under the act. Accordingly, we conclude that brokerage services are not excepted from article 601b by article 6252-11c. The boards of trustees of ERS and TRS must therefore comply with the terms of section 3.10(b) of article 601b, V.T.C.S., when contracting for the services of investment brokers.

## S U M M A R Y

Article 601b, V.T.C.S., applies to contracts for investment brokerage services of the Employees Retirement System and the Teacher Retirement System. The boards of trustees of these retirement systems must comply with the provisions of House Bill 799 of the 72d Legislature when awarding such contracts. ERS and TRS are therefore required to make a good faith effort to assist disadvantaged businesses in obtaining at least ten percent of the total value of contracts awarded for investment brokerage services.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Steve Aragón
Assistant Attorney General